Good morning, Your Honors. My name is Jacqueline Dryden, and I represent the government of the United States. This is an immigration case arising from the government's challenge to the district court's grant of Mr. Tye's petition for a writ of habeas corpus. The government respectfully requests that this court reverse and vacate the district court's decision because Mr. Tye's detention is lawfully sanctioned. The Attorney General, reasonably interpreting the statutory provision authorizing the detention of criminal aliens, and consistent with the Supreme Court's decision in Zavidas v. Davis. It's the latter that's the problem, isn't it? I mean, why is this regulation consistent with the Supreme Court's opinion? It looks to me, just from playing them side by side, that it's the government saying, well, we don't like it, and so we're going to keep doing it anyway. It seems almost exactly what the Supreme Court said could not be done. Your Honor, Judge Graber, the government was not at all coming to terms with the Supreme Court's decision in Zavidas. What it did was look at the general rule in Zavidas, and that is that an alien with a final order of removal who cannot be removed in the reasonably foreseeable future may be detained for only a six-month presumptively reasonable period of time. What the Supreme Court further said was that it was not dealing with the case of terrorism or special circumstances, such as someone who is dangerous and has a mental illness. They didn't say that, did they? They specifically accepted from their decision at page 696. Okay. I'm looking at 696. They specifically said that. Terrorism or other special circumstances giving deference to the judgment of the political Yes, Your Honor. Okay. We're not even back here, either, are we? I mean, there's not a suggestion that the individual involved here raises national security concerns. He may well be a street thug and a violent person, but I haven't heard anything that suggests national security interests are involved. I'll address Judge Graber, and then I do have a response to you. It's a similar question, really, that it seems, like Judge Clifton, I read that, is accepting those things that have to do with political questions, like who is a terrorist and threats to national security and not ordinary dangerousness. Your Honor, at page 691 of the Supreme Court's decision in Zodby-Dos, it does mention that special circumstances can include a dangerousness plus coupled with a mental illness, and that is where the government takes as a starting point for its authority to promulgate the regulations that it did. With regard to Judge Clifton's question regarding national security, I believe that when we have an individual who is not a citizen of the United States and who has a final order of removal and is going about our country violently attacking citizens or guests that are in this country, that it does raise the specter that some national security concerns have been raised. Well, I could make out that definition, but that threatens to stretch national security beyond the point where you lose its real meaning. And nobody is suggesting that this is an agent of a foreign government or a foreign terror organization or anything else. It sounds like he's basically a thug, which, unfortunately, we have a good number of of our own. And unless you can tell me that there's something more specific in the record that suggests this is something unique to be given to the government's prerogative to wage war or conduct foreign policy, then I'm going to take him out of the national security category and treat him in a way which I think is for legitimate concern in the way suggested at your second reference, the 691 references, as someone who may well be lawfully confined in a protective fashion. But as I read 691, it's not talking about what Congress provided for in this statute. It's speaking more generally toward what you can constitutionally do in the form of civil commitment, for example. That is, the Constitution does permit a form of civil commitment. You can, without being convicted of a crime, be held against your will. And I'm certain the State of Washington, as all the other states I know of, has a civil commitment provision. And as I read this Avedis decision, the Court there is saying you can have civil confinement consistent with the Constitution. I'm not sure what the Court is saying here is that this statute passed by Congress opens that door so that you, the Department of Justice, you, the Attorney General, have the authority to hold otherwise removable aliens because you perceive that threat. Because later when the Court speaks in terms of its holding, it does not have, at least not explicitly, a reservation or a qualification for this civil commitment type provision. I do want to address the national security issue, and then I will discuss the Attorney General's reasonable interpretation of this Avedis. The Supreme Court recently in Kim v. DeMori recognized, and I don't know at what page, Your Honors, that we can't just have a situation where foreign governments can be dumping their citizens on our country because they don't want that citizen to no longer be in that country. And I suspect Vietnam would say much the same about this individual and how he came to be in the first place. So this is not a problem uniquely of Vietnam's making. Well, he was a citizen of his country, and he still is a citizen of his country until approximately age 26. So with regard to the Attorney General's reasonable interpretation of the Supreme Court's decision in Za Avedis, the government submits that the holding is that an alien with a final order of removal may only be detained for a reasonable period of time. However, this Court in Lima and Peelage recognized that this isn't an absolute rule, that there might be cases where an individual alien may be detained beyond the six-month reasonable period of time, for example, where they have not assisted in obtaining their travel documents to return to their country. So there are exceptions to the decision in Za Avedis. Well, those exceptions relate to the actual ability to remove. And the Supreme Court did say you could hold beyond six months if there was reasonable prospect. I'm not quoting that accurately. But if you were still fairly making legitimate efforts to remove the individual, that no longer appears to be an issue with regard to this individual. He's not accused of doing anything to impede his removal to Vietnam. The problem is on Vietnam's refusal to accept. But I don't understand there to be a challenge to this Court's determination that we're no longer talking about removal as a serious prospect in the foreseeable future. The issue now is whether, okay, you've got somebody who's subject to removal, but we can't get rid of. Can we hold him not because of the effort to remove, but because we determine he's a dangerous individual? I don't think our previous cases have spoken to the situation being presented by this case. No, this is a case of first impression, Your Honor. And, you know, as I mentioned, there are exceptions to the absolute Za Avedis rule. Lima and Pilich be providing examples of two of those exceptions. Those are the exceptions Za Avedis itself established, which is if you're still trying to accomplish removal, it's okay. I mean, Za Avedis itself sets that one up. Right. And the court in Za Avedis also accepted from the parameters of that decision terrorism or special circumstances. And in light of the Supreme Court's decision. I'm looking forward to some possible additional legislation, because here the court was interpreting the very statute you're relying on. Yes, Your Honor. And by saying that, you know, there could be some other circumstances that would justify it, but not this statute. Well, Your Honor, Section 241A6 is still good law. And the Supreme Court did not strike down that law. What it did was read a temporal limitation into that provision. That's right. But you want to exceed that temporal limitation, correct? Your Honor, not no, we do not want to exceed that temporal limitation. What we do is we want to say that the Supreme Court's decision provided an exception. And the Attorney General, and the Attorney General. It wasn't an exception to this statute. It was saying broadly that even though this statute may not cover all these other possibilities, and there could be new statutes. As I read that statute, and the court's interpretation of it, they're saying, you know, under this statute, these are the restrictions. But again, it provided an exception for terrorism and special circumstances. And it's in light of. Your Honor, it's saying this statute provides for. It accepted from reading the temporal limitation that the Supreme Court, the temporal limitation gloss that the Supreme Court provided to Section 241A6. It said, there's that rule. However, we're not, within this rule, we are not going to consider terrorists or aliens who pose special circumstances. I was just going to say, I didn't see them saying, within this rule. The court did say, we're not going to consider this. Right. And it, well, it was an as-applied challenge. The Supreme Court's decision was an as-applied challenge, and it said that it was not dealing with those cases. In light of that discussion, and with the Attorney General's authority to promulgate regulations dealing with the Immigration and Nationality Act, the Attorney General promulgated these regulations, keeping in light the Supreme Court's decision in Zavidas, promulgated these regulations to continue the detention of an alien who poses a special danger. Well, you know, I have difficulty with the special danger piece of this as fitting within it, because in terms of dangerousness to the community, I don't see this individual as being meaningfully different from the two persons who were before the court in Zavidas. I mean, Ma, who was the other individual, had been involved in shooting people, and, I mean, they were horribly dangerous. And so we know from the Supreme Court's dealing with it that dangerousness really doesn't get you there. Well, in this case, Your Honor, it's more than just a dangerousness. It's a dangerousness coupled with a mental illness or personality disorder. It takes us back to the question of whether that may certainly be enough for civil commitment under State law. But I just don't understand how that's the equivalent of this kind of detention, where it's not a commitment for treatment. Your Honor, Mr. ---- I do want to save some time. I'm going to speak quickly to this, and then I would like to save two minutes as rebuttal. Counsel for Mr. Tai raised that in his brief in response to the government's opening brief. And the standards that the government set forth in the regulations dealt only with the legal aspect of his continued detention. It did not discuss his medical treatment. It would be amiss for this Court to believe that Mr. Tai has not been offered some sort of medical treatment to deal with his personality disorders, antisocial personality and bipolar disorder. The problem has been is that Mr. Tai hasn't refused any such treatment. And I think you've reviewed that. You've probably seen the transcripts from the administrative proceedings. He won't accept these treatments. So ---- It's a difference between this and a civil commitment in a State where someone is committed involuntarily, even if they don't desire treatment, if they meet the criteria. I mean, isn't that the whole point, that someone who needs treatment and refuses it and is dangerous and fulfills all the other requirements can be civilly committed? But, Your Honor, there's no way for the government of the United States to ---- state civil commitment proceedings are going to be sufficient to keep Mr. Tai ---- You know already that it's insufficient about them. Is there a reason for us to believe the state civil commitment statute is not going to be sufficient? Your Honor, that's an unknown at this point. I don't ---- I would never say that it's not insufficient. We don't know if it will be applied to Mr. Tai in the way that the Federal Government would want it to be applied to protect the citizenry and the guests of the United States. Well, certainly the State of Washington has every bit as great an interest in protecting its citizens as the Federal Government does. And there are citizens who have ---- who are as troubled as Mr. Tai. Presumably the State of Washington does something about it. And I'm wondering, is there a reason for us to make a point of stepping back and trying to inject this exception or this situation into the immigration system, as opposed to leaving it to the State of Washington to deal with as they deal with it in other circumstances? Well, Your Honor, Mr. Tai is an alien with a final order of removal. So there is an immigration aspect to this case. And to the extent that the Immigration and Nationality Act is, you know, the purpose of the Immigration and Nationality Act is to protect the United States, and we have an alien in this case who has a final order of removal, then it is incumbent upon the government, and it's their responsibility to make ---- to ensure that the safety of the United States is continued. And we can't just turn over to the State of Washington Mr. Tai with no guarantees that he will go through the system as the Federal Government needs him to go through. Your Honor, that gets back to Judge Graber's question that Zavadas had a long criminal record himself, drug crimes, attempted robbery, burglary, theft, history of life. It's really a danger, as you're just saying, a danger to the community that is involved that you're asserting in this case where I don't see any difference than the Supreme Court was dealing with in Zavadas. Your Honor, I do not believe that this type of mental psychiatric evaluation was made of Zavadas. Surely you're not saying that there's a reason to keep somebody in order to give them mental treatment if there is no danger to the community. It's the danger to the community that we're really concerned with, whether it's because of a mental condition or because of this guy's tenacity to keep doing this sort of thing. It's not surely to keep a person because you want to give him some mental treatment.  Your Honor, if he was a dangerous alien and we and the federal government allowed him to go on the street and there was no mental condition or personality disorder that would show a tendency toward future violence, without that illness and he was just a violent criminal as evidenced by his past criminality, then yes, he would, under the Supreme Court's decision, we would have to release him from detention. However, Mr. Tai has this mental condition or personality disorder that shows that he has a tendency toward future acts of violence. And the federal government has a responsibility to protect the United States from these future acts of violence. So it's the second prong, it's not simply the first prong that we're relying on in trying to circumvent the Supreme Court's decision, we took into consideration the Supreme Court's decision and added the mental illness component and the fact that there's no conditions of release that can assure the public's safety. I know I've gone. We'll restore some time since we asked you a lot of questions. We'll hear now from Mr. Stansell. May it please the Court, my name is Jay Stansell. I represent Thuan Tai, who is a Vietnamese person who's been ordered deported with final order of deportation 14 months ago and cannot be removed to his home country. The district court ordered his release, granted his petition for writ of habeas corpus in order that he be freed. He remains detained pending this appeal in King County Jail on contract with the BICE. Why doesn't that fit with the exception in Zalvydas that the opposing counsel is arguing for? Your Honor, there is no exception. For one, the Lima cases and the Appellate case, I think one of your honors pointed out, that's discussed in the context of the holding of the Supreme Court's decision. The government, in its argument, looking for an exception that doesn't exist, relies totally upon Section 3, capital A, of that decision, which is nothing more or less than a broad discussions of the Supreme Court's substantive due process jurisprudence that underlied its necessary conclusion that there's a constitutional problem presented by Ma on Zalvydas, and therefore they'd construe the statute accordingly. Let me ask it this way, because I think this is a similar question to the one that Judge Huggis just asked you. The Supreme Court does take some pains in Zalvydas to preserve the process of civil commitment for those persons who are mentally ill and dangerous. That's correct. They do say that this is something that can happen, even if it's an indefinite form of detention. So a State can do that, and your briefing assumes that. Yes, that's correct. And Washington could commit this person if they can demonstrate that he's both mentally ill and dangerous to others. Why can't the Federal Government go into the business of civil commitment, just like the States, in the context of persons who are subject to deportation but can't be deported? In other words, if it's okay for a State to do a civil commitment, and we know that it is, why isn't it okay for the Federal Government to do a civil commitment and detain someone indefinitely if those criteria are met? Well, I think there are two responses to that. One, which I haven't even briefed, but I was thinking about it recently sitting here in argument, I think it raises Federalism concerns. Like, what's the particularized Federal interest that's separate and apart from the State? The interest is that this is a person who ought to be deported. Well, it's a person who can't be deported, though, and I think that's... But he's an alien who ought to be deported, who has been ruled to be deportable. So that doesn't mean that if, you know, someone sitting in the audience here who's an American citizen has a mental illness and is dangerous that the Federal Government can reach out and grab them. But why isn't there sufficiently legitimate Federal interest to permit Federal action? Well, first, I just raised the question. I'm not sure whether there might be a Federalism concern here because one of the issues in the litigation for Ma in the Supreme Court, the government was repeatedly doing the same thing. We've got this immigration interest. Therefore, the substance of due process jurisprudence doesn't apply to this individual. It's different because we've got this immigration. And the Supreme Court said if you can't deport him, then he's treated as any other person for purposes of substance of due process. But if I could respond more directly to it, and I think more powerfully to it, is that the references to Kansas v. Hendricks, which is, by analogy, I think we can talk about the Washington State sexual predator statute because it's virtually identical to Kansas'. Analogizing to that, and I guess in dicta, but assumingly reaffirming that that's okay, the court did nothing to disturb the concepts of we have three branches of government in this case. In fact, at 696, which the government cites, where they're trying to extract the exception in Section 3A, they talk about we're not disturbing the political branch's power to deal with the situation. What's wrong with this is we have a unilateral seizure of the power to indefinitely detain an individual by the Attorney General and not by Congress. You're saying if Congress amended the statute to provide what amounts to a civil commitment provision for removable aliens, that there would not be a constitutional objection to that, and that would not by itself run afoul of Zavitas? There wouldn't be a separation of powers argument for that, and there wouldn't be the ultra-virus regulation argument that we have. There may or may not be this secondary federalism concern that I'm raising about what's – You don't have to concede that case today. Right, exactly. You're focusing here on this being actioned unilaterally by the Attorney General as opposed to Congress changing the law that was at issue in Zavitas. There's simply no statute. There's a statute in Kansas v. Hendricks. There's a statute in every situation discussed about in 3A where there was indefinite detention or a civil commitment of individuals. There's a statute for indefinitely detaining post-final order aliens who are terrorists. It's USA Patriots, Section 412, which was passed post-Zavitas and after the September 11th tragedies. Congress can act. I'm not going to say – but I would also say this. There's no statutory equivalent to the Washington State commitments. That's correct. And there's no statutory equivalent to ACFR, Section 241.14. There just is no statute. And it's fundamental in our government that what preserves our democracy is that we have three separate branches of government and the executive can't go out and seize people. They couldn't go out and seize steel mills in Youngstown, Sheet and Tube, and that is still good law. The rise of the administrative state enormously expanded the executive's powers, but we still have the Constitution and the need to go to Congress to look for guidance and to look for implementing regulations that they can implement. There's plenary power of the political branches to deal with aliens still. Zavitas left much of that alone, but there's not plenary power to violate the Constitution and there's not plenary power to ignore the political – the other political branch, Congress, and just pass your own statute. If you're speaking here with regard to the civil commitment argument, the Court tells us in Zavitas that you can hold somebody without violating the Constitution. That's correct. So I think approaching the argument as you're now articulating it in terms of what Congress has done, you may be right with regard to separation of powers, but the civil commitment provision presumably could be enacted by Congress without itself running afoul of the Constitution. But I would say this, that if Congress passed Section 241.14 verbatim, it would be an unconstitutional law because it in no way measures up to the standards of the Washington sexual predator or the Kansas sexual predator law. There is no right to court-appointed counsel at government expense. There's no right to court-appointed expert at government expense. But it's not necessarily punitive in nature to civilly commit someone who's dangerous. Well, it is if there's no reasonable treatment available. And counsel misspeaks when she says that there's treatment available. He is in an overcrowded King County jail where there is a modicum of background, you know, we'll keep you alive, mental health, treatment. But one of your honors recognized that if you were in the civil commitment process, there is a process where you will receive treatment, you'll receive it involuntarily, if that's what it's going to take to get you well. And we cite to Dr. Mainline an expert that we presented before the immigration judge. So you're saying Congress would not only have to pass the statute, but would have to provide either in that statute or in some other that persons who are detained pursuant to this process receive treatment as would any other civilly committed person? That's correct. I think, you know, to simply warehouse people, in our final submissions for the supplemental excerpts of record, which I had to file afterwards a motion to accept that late, but it was the concluding testimony of my witnesses and the government's witnesses before immigration judge Ho. Their own witness said at page 558 through 559 of the excerpts that he agreed that I.C.E. does not have outpatient treatment for individuals like Mr. Tye. I.C.E. does not have inpatient treatment for I.C.E. He states, quote, it's just the detention, quote, it's just designed to hold them long enough to affect their removal. And for Mr. Tye, that could be his lifetime. This flies in the face of Supreme Court jurisprudence regarding statutes that authorize, I think. They've upheld statutes. There's no statutes here. And without a statute, it just simply doesn't work to begin with. But if there were a statute modeling 241.14, they really would need to buttress and add in the substantive and procedural rights envisioned in Kansas v. Hendricks and similar regimes that have been upheld by the court before it would be upheld by the Constitution. But one other thing that I would like to mention as I'm working towards summing up, I think a natural reading of the statute and Zudvitas compels this. If you look at Zudvitas all in context and the structure of it, it supports our argument that this regulation is simply ultra-virus, and that's the end of the story. If the court were inclined to embrace the government's, what I think is contorted view of both the statute and the Supreme Court's decision, I think the court must think twice about doing that because if in order to do that, the court has an additional obligation, just like this court did in Ma, to avoid a serious substantial constitutional question that would be presented by embracing a particular view of a statute. So there's a constitutional avoidance issue that's layered in between the ultra-virus argument, which is what Judge Zille relied upon, and the fact that on its face 241.14 is unconstitutional. Unless there are further questions, I thought that's all I had. Thank you, counsel. Thank you, Your Honors. We took a lot of your time with questions, so we'll give you two minutes for rebuttal. Thank you, Your Honors. I first want to say that not only did the Supreme Court leave open the possibility for the Attorney General to promulgate the regulations as he did, but this court in the Gee case and two other or three other courts, Your Honors, have recognized the language that the government relies on to allow the Attorney General to promulgate these regulations. So, yes, this is a case of first impression on these specific regulations, but it's not new to this court that there were going to be terrorism or special circumstances, such as the instant case, where the Attorney General may further promulgate regulations allowing for the continued detention of certain aliens. Secondly, it would not require a statutory amendment to allow for the continued detention of aliens. As the Supreme Court recently mentioned in Demore v. Kim, a case I just mentioned, the INS can promulgate regulations as opposed to Congress enacting legislation that does not impermissibly step on Congress's toes with regard to its traditional powers of legislating matters over aliens. So it would not require an additional legislative amendment for these regulations to stand. Thirdly, Your Honors, the Attorney General has at 241G the authority to place aliens in detention where he sees fit, and this is a decision that is a discretionary decision by the Attorney General for which this court does not have jurisdiction to review. Finally, Mr. Tai's detention is not ---- Is it your position that we lack jurisdiction over the appeal? I mean, that can't be right because you brought the appeal. Well, there is jurisdiction over the habeas decision, Your Honor. I don't remember the provision, but yes, this court does have jurisdiction over the habeas appeal. Mr. Tai's detention is not indefinite and forever. There are provisions in the regulation at Section 241.14K that if his condition, his mental condition and circumstances materially change, that he can move to set aside the agency's determination that his detention should be continued and that that can be reviewed, and he could potentially be ---- his detention could end and he could be let back out onto the streets. Well, his detention is not permanent, but I thought indefinite means exactly what you just described, which is open-ended, subject to change. But Mr. Tai, sort of like the aliens in Lima and Peelage, he can affect his change. If he submits possibly to the medical treatment that has been offered to him but he's refused, he could become better. His mental health could improve and he can move to set aside the prior decisions and ultimately be released from his detention. Counsel? Thank you, Your Honors. Thank you very much. The arguments of both parties were very helpful. We appreciate them. The case just argued is agreed.
judges: Hug, Graber, Clifton